In the Matter of the Estate of JULIA A. PIERSON, Deceased.

Surrogate's Court, Steuben County, September 7, 1932.

*Wilbur F. Knapp,* for the petitioners.

*Francis M. Cameron,* for the executor.

WHEELER, S.  The petitioners Nellie E. Stenger, Catherine A. Swan and Thomas J. Arksey, nieces and nephew, respectively, of the decedent, Julia A. Pierson, have made application to reopen the probate proceeding, and to set aside the decree admitting the will of the said decedent to probate, which was entered on the 21st day of March, 1932.  The probate decree was made upon waivers of citation executed by each of the petitioners, which waivers were in effect consents to the probate of the will.  It is claimed by the petitioners that the waivers were obtained. as a result of misrepresentation on the part of Mr. Francis M. Cameron the attorney for the executor, in that they were told that the waivers would not deprive them of their rights to file objections to the probate of the will, and that they relied upon such statements, and signed the waivers without any legal advice or knowledge on their part as to the effect thereof.  Furthermore, the petitioners

contend that the will was the result of undue influence, and that the testatrix at the time was of unsound mind, and incompetent to make the same.

The legal grounds for a vacatur set forth in section 20, subdivision 6, of the Surrogate's Court Act must be established; either fraud, newly-discovered evidence, clerical error or other sufficient cause. Under the provisions of this section the power to open a decree must be exercised only in a case where a court of general jurisdiction (the Supreme Court) exercises the same powers. There must be shown to the satisfaction of the surrogate, as defined in *Matter of Elias* (222 App. Div. 728): " Facts sufficient to afford a substantial basis for contesting the will and that reasonable probability of success to justify the opening of a *dvcree* admitting a will to probate." It is not open to any one, merely by asserting a nebulous claim to an estate, to ask that a solemn decree admitting a will to probate be vacated, and a long and expensive contest be entered upon. (*Matter of Leslie,* 175 App. Div. 108, 112.)

After a careful study of the several conflicting affidavits submitted herein as to the facts concerning the execution of the waivers and the probate of the will, I have come to the conclusion that there was no fraud, misrepresentation or other misconduct tending in any way to mislead the petitioners, on the part of the attorney for the executor, or any one else. On the contrary, I find that the petitioners executed the waivers voluntarily, and with full knowledge of what they were doing, and of the legal effect thereof. The evidence submitted shows that these petitioners spent an entire evening at Mr. Cameron's law offices discussing the situation, and that they left the office without signing the waivers, and apparently in doubt as to what course they should pursue. Copies of the will and an inventory of the estate were furnished for their information. The following day they took legal advice on the subject, and consulted with both the senior and the junior members of the law firm of Robbins & Robbins. Both of these gentlemen testified that the legal effect and general purpose of the waivers was fully discussed, and the petitioners were told by said attorneys not to sign the waivers if they intended to contest the will. In fact, it was stated by one of the petitioners in the presence of said attorneys: " We might as well sign the waivers and go home as there is nothing we can do about it, and permit the will to be probated." This evidence to my mind conclusively belies the allegation that petitioners had no legal advice as to the effect of the waivers. After receiving this advice, and on the very same day, they duly executed the waivers. Their present position is obviously a change of mind, or an afterthought after they had

deliberately waived their day in court and consented to the probate of the will.

In view of the conclusion above expressed, the question as to whether the petitioners have met the further requirement of the court in *Matter of Leslie (supra)*, viz., the probability of a successful contest, becomes relatively unimportant. However, I do not care to base this decision solely on my prior conclusion, but prefer that it rests squarely on the merits as to all the questions involved.

It is claimed by the petitioners that the decedent was of unsound mind at the time of the execution of the will, and that the instrument was procured by undue influence. In my opinion neither of these contentions are sustained by the proofs. The record is entirely devoid of any material evidence tending to even indicate undue influence, as laid down by the decisions.

The proofs submitted by the petitioners on the issue of testamentary capacity are unconvincing. A short affidavit signed by eleven persons containing a mere conclusion only, that certain unspecified and unnamed observations and conversations with decedent impressed the deponents as irrational. In other affidavits more particular acts and incidents are set forth, but nothing indicating anything unusual, or irrational, and only two of the deponents venturing to say that any of the specified acts impressed them as irrational. The will was executed on the 30th day of September, 1931, at a time when testatrix was in normal physical condition. Specific statements as to her mental condition on the day of the execution of the will, or about that time, are entirely lacking.

The evidence submitted by the executor shows that Mrs. Pierson was in many respects an extraordinarily talented and intellectual type of woman. After her husband's death she had no immediate family, and was consequently left alone save for her servants and a pet dog to which she was greatly attached. She devoted her life largely to charities and literary pursuits, taking the greatest interest in those organizations and institutions which she later selected as the objects of her bounty. She was particularly engrossed in the activities of the Hornell Children's Home, the Humane Society, the Presbyterian Church, as well as for years prior to her death an active officer in certain literary and social clubs. It may be properly stated that the latter years of her life were to an unusual extent devoted to the public weal. Her mental capacity is overwhelmingly established by her intimate associates. The general character of her testamentary bequests is entirely consistent with the activities and interests of her life, and reflects her own wishes as to the disposition of her estate.

It is not necessary to review the evidence in detail. It is

sufficient to state that if all the evidence now offered by the petitioners had been presented as the contestant's case upon the trial of the probate proceedings, a direction of a verdict in favor of the admission of the will would be inevitable under the authorities. It is imperative, if confusion and needless litigation is to be avoided, that finality should characterize decrees of probate, and that they should not be set aside where the parties have been duly cited, or have voluntarily filed waivers and consents, except in extraordinary cases, and when errors are plain, palpable and beyond any question. (*Matter of Gori*, 129 Misc. 541; *Matter of Filley*, 20 N. Y. Supp. 427.)

Submit order denying the application accordingly.